**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MIDWAY WHOLESALERS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.    21-cv-5441 |
| | ) | |
| ENCOVA INSURANCE, f/k/a MOTORISTS | ) | |
| MUTUAL INSURANCE COMPANY, | ) | Jury Demanded |
| | ) | |
| Defendant. | | |

**MIDWAY WHOLESALERS INC.'S COMPLAINT**
**AGAINST MOTORISTS INSURANCE**

Plaintiff Midway Wholesalers, Inc. ("Midway"), by and through its attorneys, Quarles &

Brady LLP, for its Complaint against Defendant Encova Insurance, f/k/a Motorists Mutual

Insurance Company ("Motorists"), states as follows:

### I. NATURE OF THE CASE

1.      This is an insurance coverage lawsuit arising out of Motorists' breach of its

coverage obligations to Midway under a first-party property insurance policy issued by Motorists

to Midway.

2.      The Motorists Policy provides first-party property insurance, including extra

expense coverage, for property owned or operated by Midway located at 41 W. 84th St.,

Chicago, IL (the "Midway Facility").

3.      On or about May 31, 2020, as a result of rioting and looting, the Midway Facility

sustained significant property and other damage (the "Riot Loss").

4.      Motorists has denied its coverage obligations with respect to the Riot Loss.

## II. PARTIES, JURISDICTION AND VENUE

5.     Motorists is an Ohio corporation with, upon information and belief, its principal place of business in Columbus, Ohio.

6.      Midway is an Illinois corporation with its principal place of business in Chicago, Illinois.

7.     The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. This Court therefore has jurisdiction of this matter pursuant to 28 U.S.C. § 1332. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(1) and (2) because Midway resides in this district and a substantial part of the events or omissions giving rise to this action occurred in this District.

### III. FACTUAL BACKGROUND

### A. The Motorists Policy

8.     Motorists issued to Midway Commercial Property Policy No.: 5000040130 for the policy period April 19, 2020 - April 19, 2021 (the "Motorists Policy").

9.     The Motorists Policy provides, in relevant part, as follows:

**Business Income And Extra Expense Coverage**

\* \* \*

**(2) Extra Expense**

Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from the **CAUSES OF LOSS- SPECIAL FORM.**

We will pay Extra Expense (other than the expense to repair or replace property) to:

(a) Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and cost to equip and operate the replacement location or temporary location; or

2

**(b)** Minimize the "suspension" of business if you cannot continue "operations".

\* \* \*

**(8) Definitions**

\* \* \*

"Period of Restoration" means the period of time that:

**(a)** Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

**(b)** Ends on the earlier of:

**(i)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(ii)** The date when business is resumed at a new permanent location.

\* \* \*

"Suspension" means;

**(a)** The slowdown or cessation of your business activities: or

**(b)** That a part of all of the described premises in rendered untenantable, if coverage for Business Income including "Rental Value" or "Rental Value" applies.

\* \* \*

## B.  The Riot Loss

10.     Midway is engaged in the business of the distribution of alcoholic beverages.

11.     On or about May 31, 2020, riots and looting took place in Chicago, including at the Midway Facility, resulting in, *inter alia*, direct physical loss or damage to Midway's property, including, without limitation, to windows, doorways, loading docks and other property located at the Midway Facility.

12.     As a result of the direct physical loss or damage to Midway's windows, doorways, loading docks and other property located at the Midway Facility caused by the Riot Loss, and in order to protect its business and property, including business income, from further loss or damage, Midway was required to retain the services of a security guard company to provide on-site security guard protection to its business.

13.     The services of a security guard company were necessary for Midway to avoid or minimize the suspension of its business and to continue its operations.

14.     The services of a security guard company were necessary expenses Midway incurred during the "period of restoration" that Midway would not have incurred if there had been no direct physical loss or damage to property at the Midway Facility caused by or resulting from a covered cause of loss.

15.     Midway has submitted to Motorists for reimbursement the costs Midway incurred with respect to the services provided by the security guard company as a result of the Riot Loss.

16.     Motorists has failed or refused to fully reimburse Midway for the costs Midway incurred with respect to the services provided by the security guard company as a result of the Riot Loss.

## COUNT I
### (Breach of Contract)

17.     Midway repeats, re-alleges and incorporates by reference each of the allegations contained in the above paragraphs 1-16 as if fully set forth herein.

18.     The security guard services retained by Midway as a result of the Riot Loss constitute "extra expense," triggering coverage under the terms of the Motorists Policy.

19.     Motorists has a duty under the Motorists Policy to reimburse Midway for the costs of the security guard services Midway incurred as a result of the Riot Loss.

4

20.     Motorists has breached its duty under the Motorists Policy by failing or refusing to fully reimburse Midway for the costs Midway incurred to retain security guard services as a result of the Riot Loss.

21.     Midway has complied with all terms and conditions of the Motorists Policy and no exclusions apply to bar coverage.

22.     Motorists' failure to fully reimburse Midway from the costs Midway incurred to retain security guard services as a result of the Riot Loss constitutes a breach of the Motorists Policy.

23.     Motorists' breach of the Motorists Policy has caused damage to Midway and will continue to cause damage to Midway.

## **COUNT II**
### **(Violation of Section 155 of the Illinois Insurance Code - 215 ILCS 5/155)**

24.     Motorists repeats, re-alleges and incorporates by reference each of the allegations contained in the above paragraphs 1-23 as if fully set forth herein.

25.     Section 155 of the Illinois Insurance Code (215 ILCS 5/155) provides, in relevant part, as follows:

> (1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

> (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

> (b) $60,000;

> (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

***

26.     Motorists has taken the position that coverage under the Motorists Policy for the costs of the security guard services Midway incurred as a result of the Riot Loss is limited to $5,000 as a result of an endorsement in the Motorists Policy that Motorists asserts is intended to function as a sublimit ("Motorists' Coverage Position").

27.     Motorists' failure to fully reimburse Midway for the costs Midway incurred to retain security guard services as a result of the Riot Loss is vexatious and unreasonable under the circumstances because Motorists' Coverage Position is patently contrary to the plain language of the Motorists Policy and well-established Illinois law.

WHEREFORE, Plaintiff Midway Wholesalers Inc. prays that this Court enter judgment as to Defendant Motorists Insurance:

(a)     that Motorists breached its contract with Midway under the Motorists Policy by failing to fully reimburse Midway for the costs Midway incurred to retain security guard services as a result of the Riot Loss;

(b)     awarding Midway a money judgment for the amounts it is entitled to recover under the Motorists Policy and/or as damages;

(c)     awarding Midway all attorney's fees, costs and expenses incurred in this action as allowed by law or equity;

(d)     awarding Midway all interest on the above amounts allowed by law or equity, including pre-and post-judgment interest;

(e)     awarding Midway all statutory damages;

(f)     awarding Midway all punitive and exemplary damages allowed by law or equity; and

(g)    awarding Midway such other and further relief as this Court deems necessary, proper and just.

**Plaintiff demands a jury trial.**

Dated: October 13, 2021                              Respectfully submitted,

                                                    MIDWAY WHOLESALERS INC.

                                                    By:    /s/ Paul L. Langer
                                                           One of Its Attorneys

Paul L. Langer (#6189216)
John A. Aramanda (#6323576)
QUARLES & BRADY LLP
300 North LaSalle Street, Suite 4000
Chicago, IL 60654
T: 312/715-5000 | F: 312/715-5155
Paul.Langer@quarles.com
John.Aramanda@quarles.com