## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| MIDWAY WHOLESALERS, INC., | ) | |
| | ) | Case No. 1:21-cv-05441 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge John Robert Blakey |
| | ) | |
| MOTORISTS COMMERCIAL | ) | |
| MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This case involves an insurance dispute concerning Defendant Motorists Commercial Mutual Insurance Company's ("Motorists") coverage obligations under a property insurance policy it sold to Plaintiff Midway Wholesalers, Inc. ("Midway"). The parties dispute whether Motorists has an obligation to reimburse Midway for the cost of security guard services Midway retained after its warehouse was damaged in the rioting that took place in the City of Chicago in May 2020. Midway sued Motorists, alleging breach of contract and violation of section 155 of the Illinois Insurance Code, 215 ILCS 5/155. [18]. Motorists moves to dismiss Midway's section 155 claim under Federal Rule of Civil Procedure 12(b)(6). [20]. For the reasons stated below, this Court denies Motorists' motion [20].

## I.    Facts

Midway, an alcoholic beverage distributor, maintains a warehouse in Chicago, Illinois. [18] ¶¶ 2, 10. Midway purchased from Motorists a commercial property Policy (the "Policy") to cover its properties, including its warehouse, effective April

1

19, 2020, through April 19, 2021. *Id.* at ¶ 8. Among other provisions, the Policy includes a Business Income (And Extra Expense) Coverage Form, which requires Motorists to pay for certain necessary expenses incurred by Midway when minimizing disruptions to Midway's business, and a Building And Personal Property Coverage Form, which requires Motorists to "pay for direct physical loss of or damage to [the warehouse] caused by or resulting from any Covered Cause of Loss." [19-1] at 7–8, 70, 54.

The Policy also contains an endorsement entitled the "MiChoice Property Protector-Illinois Endorsement" (the "Endorsement"), which expressly states that it modifies only the Building And Personal Property Coverage Form and the Causes of Loss – Special Form under the Policy. *Id.* at 110–42. The Endorsement provides:

> **MiCHOICE PROPERTY PROTECTOR – ILLINOIS**
>
> **THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
>
> This endorsement modifies insurance provided under the following:
>
> BUILDING AND PERSONAL PROPERTY COVERAGE FORM
>
> CAUSES OF LOSS – SPECIAL FORM
>
> The coverage provided by this endorsement is subject to the provisions, including exclusions and limitations, applicable to the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM** and the **CAUSES OF LOSS – SPECIAL FORM**, except as provided below.

*Id.* at 110. The Endorsement adds additional coverages to the Building and Personal Property Coverage Form of the Policy, such as coverage for security guards, lock

replacement, and for recharging fire extinguishers. *Id.* at 112. The additional coverage for security guards provides:

> The **BUSINESS AND PERSONAL PROPERTY COVERAGE FORM** is amended as follows:
>
> * * *
> **G.** For the purposes of this endorsement, the following items are added to **A. Coverage**, **4. Additional Coverages:**
>
> **Security Guard Coverage**
>
> We will pay up to $5,000 for the expenses you incur to hire a licensed private security guard or off-duty law enforcement officer in order to protect the public or your property from hazardous conditions which result from a Covered Cause of Loss. This is an additional amount of insurance and no deductible applies to this Additional Coverage.

*Id.* at 111–12.

The Endorsement also provides additional business income and extra expense coverage to the Building and Personal Property Coverage Form up to a limit of $100,000. *Id.* at 110. For extra expenses, the Endorsement provides:

> **Business Income And Extra Expense Coverage**
>
> * * *
> **(2) Extra Expense**
>
> Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from the **CAUSES OF LOSS – SPECIAL FORM**.
>
> We will pay Extra Expense (other than the expense to repair or replace property) to:
>
> (a) Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or

temporary locations, including relocation expenses and cost to equip and operate the replacement location; or

(b)    Minimize the "suspension" of business if you cannot continue "operations"

\* \* \*

**(8)   Definitions**

\* \* \*

"Period of Restoration" means the period of time that:

(a)    Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

(b)    Ends on the earlier of:

    (i)    The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

    (ii)   The date when business is resumed at a new permanent location.

\* \* \*

"Suspension" means:

(a)    The slowdown or cessation of your business activities; or

(b)    That a part of all of the described premises in [*sic*] rendered untenantable, if coverage for Business Income including "Rental Value" or "Rental Value" applies.

*Id.* at 112–13, 116–17. Although the language for extra expense coverage provided under the Endorsement remains similar to the extra expense coverage under the Business Income (and Extra Expense) Coverage Form, the two coverages are distinct because, among other things, the former limits coverage to $100,000 while the latter limits coverage to $3,279,000. *See id.* at 39, 110.

4

On May 31, 2020, riots and looting in Chicago damaged the warehouse, including its windows, doorways, and loading docks. [18] ¶ 3. In response, Midway retained the services of a security guard company to provide on-site protection to its business, including the warehouse. *Id.* ¶ 12. Midway believed security guard services were necessary to avoid further disruption to its business, viewing it as an extra expense under the terms of the Policy, and thus, requested reimbursement for the security guard services from Motorists. *Id.* ¶¶ 13–15.

On September 21, 2020, Motorists sent Midway a coverage letter in response to Midway's request for reimbursement. *Id.* ¶ 26. In the coverage letter, Motorists stated that based on "our investigation regarding the additional costs for security to protect your property, the full limit of insurance for this coverage is specifically described in the MiChoice Property Protector endorsement" and explained that since the "security guard coverage is specifically described, the policy intends to limit the amount of reimbursable expenses for private security at $5,000, and therefore no other coverage can be utilized to stack on this limit." *Id.* On February 5, 2021, Motorists sent another coverage letter to Midway largely identical to its coverage determination in the September 21, 2020 letter. *Id.* ¶ 27.

In its second amended complaint, Midway alleges that Motorists breached the Policy by refusing to fully reimburse Midway for the costs it incurred to retain private security guard services (Count I). *Id.* ¶ 17. Midway also alleges that Motorists' failure to reimburse Midway for these costs was vexatious and unreasonable under

section 155 of the Illinois Insurance Code, 215 ILCS 5/155. (Count II). *Id.* ¶ 24. Motorists moves to dismiss this latter claim (Count II). [20].

## II. Legal Standard

As an initial matter, Motorists filed its Rule 12(b)(6) motion to dismiss *after* it had already filed its answer and affirmative defenses to Midway's second amended complaint. *See* [19] (filed on January 13, 2022), [20] (filed on January 14, 2022). Under Rule 12(b), motions asserting certain defenses such as Rule 12(b)(6) "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Thus, filing a motion to dismiss after or simultaneously with an answer is technically improper. Additionally, neither Midway's second amended complaint nor Motorists' Rule 12(b)(6) motion to dismiss attach the insurance policy at issue. *See* [18], [20]. But both pleadings reference the policy and Motorists did attach it to its earlier-filed answer, [19], [19-1], which the Court ordinarily cannot consider on a Rule 12(b)(6) motion to dismiss. *See Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2001) ("As a general rule, on a Rule 12(b)(6) motion, the court may consider only the Plaintiff's complaint.").

As a result, the Court construes Motorists' Rule 12(b)(6) motion to dismiss for failure to state a claim as a Rule 12(c) motion for judgment on the pleadings, which will allow the Court to consider the insurance policy at issue, as well as Motorists' post-answer arguments. *See Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 n.6 (7th Cir. 2000) ("[B]ecause Defendants previously filed their answer, the district court correctly construed Defendants' motion as a motion for judgment on the pleadings

6

under Rule 12(c)); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."). This approach, of course, does not change the applicable legal standard. *See Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020) ("The only difference between a motion for judgment on the pleadings and a motion to dismiss is timing; the standard is the same.").

To survive a motion for judgment on the pleadings, a "complaint must state a claim to relief that is plausible on its face." *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017). As under Rule 12(b)(6), courts draw all inferences and facts in the non-movant's favor but are not required to accept as true any legal assertions. *Id.* In ruling on a Rule 12(c) motion, courts consider the pleadings, documents incorporated by reference into the pleadings, and any matters properly subject to judicial notice. *Id.*

### III. Analysis

Motorists argues that Midway's section 155 claim should be dismissed because the second amended complaint demonstrates a *bona fide* dispute concerning the Policy. [21] at 6. Specifically, Motorists argues that Midway's lawsuit stems from a disputed interpretation of the Policy because the Endorsement limits coverage for security guards to $5,000 and asserts that it is not unreasonable to interpret this language as a sublimit on coverage for security guards. [21] at 7.

Section 155 of the Illinois Insurance Code provides "an extracontractual remedy to policy-holders whose insurer's refusal to recognize liability and pay a claim

under a policy is vexatious and unreasonable." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1023 (7th Cir. 2013) (quoting *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 900 (Ill. 1996)). Courts consider the totality of the circumstances to determine whether an insurer's conduct violates section 155. *Golden Rule Ins. Co. v. Schwartz*, 786 N.E.2d 1010, 1018 (Ill. 2003). An insurer who "misrepresents facts, denies coverage after refusing to conduct an adequate investigation, and bases its decision upon speculation or incomplete information could be considered to have acted without reasonable cause." *Markel Am. Ins. Co. v. Dolan*, 787 F. Supp. 2d 776, 779 (N.D. Ill. 2011). Sanctions under section 155 ultimately require evidence "that the insurer's behavior was willful and without reasonable cause." *Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000). But "an insurer's conduct is not vexatious and unreasonable if: (1) there is a bona fide dispute concerning the scope and application of insurance coverage; (2) the insurer asserts a legitimate policy defense; (3) the claim presents a genuine legal or factual issue regarding coverage; or (4) the insurer takes a reasonable legal position on an unsettled issue of law." *Id.* (internal citations omitted). If the pleadings demonstrate a *bona fide* dispute regarding coverage—meaning a dispute that is "real, actual, genuine, and not feigned"—then sanctions under section 155 are inappropriate. *Am. States Ins. Co. v. CFM Const. Co.*, 923 N.E.2d 299, 308 (Ill. App. Ct. 2010).

Midway's section 155 claim is premised on the allegation that Motorists' coverage denial was "patently contrary" to the language of the Policy. [18] ¶¶ 28, 29. Under Illinois law, insurance companies are "permitted to entertain a good-faith

8

difference of opinion regarding policy coverage, even if their interpretations are ultimately incorrect." *Parker v. Allstate Indemnity Co.*, 427 F. Supp.3d 1006, 1012 (S.D. Ill. 2019). But arguments against coverage that "lack support in fact or law belie any possible good faith dispute and thus fall under section 155." *TKK USA, Inc. v. Safety Nat. Cas. Corp.*, 727 F.3d 782, 793 (7th Cir. 2013) (quoting *Bedoya v. Ill. Founders Ins. Co.*, 688 N.E.2d 757, 764–65 (1997)). Although Motorists did not move to dismiss the underlying breach of contract claim, Midway's pleadings must present sufficient facts to allow the Court to plausibly conclude that Motorists' denial of the reimbursement request lacked support in fact or law. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Based upon the pleadings and the underlying Policy,[1] the crux of the parties' dispute is whether Midway's reimbursement request for security guard services is subject to the Endorsement's $5,000 limitation for security guard coverage. Midway alleges it sought reimbursement for security guard services as an extra expense under the terms of the Policy. In its coverage letters to Midway, Motorists referenced the Endorsement and the additional coverage it provides for security guards when it denied Midway's claim for reimbursement, stating that reimbursement for security guards under the Endorsement was limited to $5,000. *See* [18] ¶¶ 26, 27; [21] at 7.

---

[1] The parties agree that Illinois law applies to construction of the insurance policy at issue. Under Illinois law, the construction of an insurance policy is a question of law. *Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 856 N.E.2d 338, 341 (Ill. 2006). An insurance policy is to be construed as a whole and requires the court to ascertain and give effect to the true intentions of the contracting parties. *First Ins. Funding Corp. v. Fed. Ins. Co.*, 284 F.3d 799, 804 (7th Cir. 2002) (applying Illinois law). If the "words used in the policy are clear and unambiguous, they must be given their plain, ordinary, and popular meaning," but a policy provision "is not rendered ambiguous merely because the parties disagree on its meaning." *Cent. Ill. Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 213 (Ill. 2004).

As an initial matter, Midway argues that Motorists' reliance on the Endorsement itself was unreasonable because Midway sought reimbursement for the security guard services as an "extra expense" under the Business Income (and Extra Expense) Coverage Form, which the Endorsement did not modify.[2]  [25] at 6. Midway's argument misses the point.  At the end of the day, Midway may be entitled to reimbursement under the Policy, either under the Business Income (and Extra Expense) Coverage Form or another Policy provision.  But if Motorists had a reasonable basis to deny coverage under the security guard Endorsement, then Midway cannot recover under section 155.  *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000); *see also Hartford Fire Ins. Co. v. Thermos L.L.C.*, 146 F. Supp.3d 1005, 1021 (N.D. Ill. 2015) ("An insurer is not liable for section 155 damages 'merely because it litigated and lost the issue of insurance coverage.'") (quoting *Am. States Ins. Co. v. CFM Const. Co.*, 923 N.E.2d 299, 308 (Ill. App. Ct. 2010)); *Dominick's Finer Foods v. Ind. Ins. Co.*, 102 N.E.3d 692, 709 (Ill. App. Ct. 2018) ("Where there is a *bona fide* dispute concerning coverage, the assessment of costs and statutory sanctions is inappropriate, even if the court later rejects the insurer's position.").  Thus, Motorists' motion turns on "whether [Motorists] had a genuine basis for disputing the policy coverage." *Nine Group II, LLC v. Liberty Int'l Underwriters, Inc.*, 168 N.E.3d 956, 967 (Ill. App. Ct. 2020).

---

[2] As Motorists points out in its reply brief, Midway's second amended complaint does not allege that it sought extra expense reimbursement under the Business Income (and Extra Expense) Coverage Form but instead quoted the Endorsement's extra expense provision, which added coverage under the Building and Personal Property Coverage Form. *Compare* [18] ¶ 9 *with* [19-1] at 70.  This distinction does not alter this Court's analysis.

Here, the pleadings allege that Motorists did not have a genuine basis to deny Midway's claim for reimbursement under the Endorsement's security guard provision. Midway alleged it was entitled to reimbursement for security guard services under the Policy's "extra expense" provisions because the warehouse's doors, windows, and loading docks were damaged by the May 2020 riots. [18] ¶ 11; [19-1] at 116–17. Midway also alleged that due to physical damage to its warehouse, it retained the services of a security guard company to protect its business. [18] ¶ 12. Midway further alleged that security guard services were necessary to continue its business operations and that Midway would not have retained security guard services but for the damage sustained to its warehouse's doors, windows, and loading docks. [18] ¶¶ 13, 14. Midway's allegations, if true, would entitle it to reimbursement under the extra expense provisions under the Policy.

In its coverage letters denying Midway's claim, however, Motorists specifically referenced the Endorsement's security guard provision when it limited Midway's reimbursement claim for security guard services to $5,000. [18] ¶¶ 26, 27. This provision provides reimbursement for security guard services as an additional coverage under the Policy's Business and Personal Property Coverage Form and expressly states that Motorists "will pay *up to* $5,000" for qualifying security guard expenses. [19-1] at 112 (emphasis added). Admittedly, as Motorists argues, this language effectively limits reimbursement for security guard services to $5,000. But unaddressed in Motorists' coverage letters to Midway is why Midway's claim was subject to the Endorsement's security guard provision in the first place.

11

Coverage under the Endorsement's security guard provision is available if the purpose for hiring security guards is to "protect the public or [an insured's] property from *hazardous conditions which result from a Covered Cause of Loss*." [19-1] at 112. In its coverage letters, Motorists referred to Midway's security guard expenses as "additional costs for security to protect [Midway's] property" and reasoned that since the "security guard coverage is specifically described" in the Endorsement's security guard provision, that provision applied to Midway's claim. [18] ¶¶ 26, 27. But the coverage letters make no mention of any "hazardous conditions" caused by the May 2020 riots that would render the Endorsement's security guard provision applicable to Midway's claim. Rather, the coverage letters indicate that Motorists relied on the Endorsement's security guard provision simply because Midway's claim also involved expenses related to the hiring of security guards. Thus, it is plausible that Motorists' reliance on a policy provision inapplicable to Midway's claim could be unreasonable.

In addition, the coverage letters do not discuss the applicability of the Policy's other coverage provisions to Midway's claim. The Endorsement's security guard provision plainly states that it is an "additional amount of insurance" and an "additional coverage" under the Policy. [19-1] at 112. But in the coverage letters, Motorists informed Midway that "no other coverage can be utilized to stack" on the provision's $5,000 limit for security guard expenses. Motorists' coverage position therefore appears to contradict the language of the Endorsement's security guard provision, particularly where, as discussed above, Midway has plausibly alleged that it is entitled to reimbursement for security guard services under the Policy's extra

expense provisions. Thus, Midway's second amended complaint plausibly alleges that Motorists' coverage determination is contrary to the terms of the Policy.

Although it is premature for the Court to decide the merits of Midway's underlying breach of contract claim, given the language of the Policy and based upon the record before it, the Court cannot conclude at this early juncture that Motorists had a "genuine basis for disputing the policy coverage." *Nine Group II, LLC v. Liberty Int'l Underwriters, Inc.*, 168 N.E.3d 956, 967 (Ill. App. Ct. 2020); *see also Med. Protective Co. v. Kim*, 507 F.3d 1076, 1086 (7th Cir. 2007) ("Whether an insured acted unreasonably or vexatiously presents an issue of fact requiring courts to consider the totality of circumstances.") (cleaned up). Midway's second amended complaint plausibly alleges that Motorists' denial of the claim for reimbursement was vexatious and unreasonable, which is required to prevail for a section 155 claim for costs and fees. Accordingly, the Court denies Motorists' motion to dismiss Count II.

13

## IV.  Conclusion

For the reasons explained above, this Court denies Motorists' motion for judgment on the pleadings for Count II of Midway's second amended complaint. [20].

Dated: September 22, 2022                    Entered:

_____
John Robert Blakey
United States District Judge